NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JEFFREY KESTEN,<br><br>Defendant. | Criminal Action No. 23-820 (RK)<br><br>**MEMORANDUM OPINION AND ORDER** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court on Defendant Jeffrey Kesten's Motion for Early Termination of Supervised Release. (ECF No. 5.) The Government opposes the Motion. (ECF No. 7.) For the reasons set forth below, Defendant's Motion is **DENIED**.

**I.    BACKGROUND**

    From approximately 2012 to 2015, Defendant Jeffrey Kesten ("Defendant" or "Kesten"), a licensed physician and authorized Medicare provider, prescribed Subsys, a fentanyl drug designed to treat cancer pain, to patients who did not need the drug in exchange for monetary kickbacks from the drug's manufacturer, Insys Therapeutics, Inc. ("Insys"). (*See* Ex. 1 ¶¶ 8–20.)[1] Through Insys's "Speakers Bureau" program,[2] because Kesten sold a high volume of Subsys, he was frequently selected to speak at educational programs and dinners by Insys and paid a fee. Between September 2012 and November 2015, Kesten willingly participated in approximately 109 speaker programs and was paid $344,000. (*Id.* ¶ 19.) Kesten routinely communicated with Insys,

---

[1] Accompanying its opposition letter, the Government emailed the Court copies of Defendant's Presentence Investigation Report ("PSR") and plea agreement, labelling the PSR as Exhibit 1, and the plea agreement as Exhibit 2. The Court adopts the same exhibit numbering scheme for this Memorandum Opinion.

[2] Insys's "Speakers Bureau" program was for "a group of medical providers selected based on the volume of [] drugs they prescribed. (Ex. 1 ¶ 14.)

asked to be invited to present at more speaker programs, threatened to prescribe medications from other companies if he was not invited to more speaking engagements, and expressed plans to "double or triple" his prescriptions. (*See id.* ¶ 20.) Prescriptions written by Kesten cost Medicare $2,671,662 (plus $4,763 in co-pays), and cost Medicaid $251,000. (*Id.* ¶ 32.)

On October 26, 2021, Kesten pled guilty to one count of conspiracy to solicit and receive kickbacks or bribes contrary to 42 U.S.C. § 1320a-7b(b), in violation of 18 U.S.C. § 371. (Ex. 2 at 2.) The guideline range for his sentence was set at 46 to 52 months. (Ex. 1 ¶ 122.) On February 28, 2022, the Honorable Daniel D. Domenico, United States District Judge for the District of Colorado, sentenced Kesten to 24 months' imprisonment and a term of three years of supervised release. (ECF No. 2-2 at 2–3.) Kesten was also ordered to pay $344,000 in restitution. (*Id.* at 6.) On June 16, 2023, Kesten completed his term of imprisonment and began his term of supervised release, which is set to expire on June 16, 2026.[3]

Kesten filed the present Motion on September 16, 2024, less than halfway through his term of supervised release. (*See* ECF No. 5.) Kesten argues that the Court should terminate his supervised release because he has "maintained an unblemished record of compliance with the conditions of his supervision[,] has no history of violence, has not had any recent arrests or convictions, and there is no evidence that he has abused drugs or alcohol." (*Id.* at 5.) The Government opposes the Motion because (1) early termination is precluded by Kesten's plea agreement, and (2) application of the relevant factors as directed by 18 U.S.C. § 3583(e) demonstrates that early termination is not warranted. (*See* ECF No. 7.)

---

[3] On October 16, 2023, the case was transferred to this Court and assigned to the Undersigned. (ECF No. 1.)

## II.     LEGAL STANDARD

A district court may terminate a term of supervised release any time after the expiration of one year of supervised release, if the court is "satisfied that such action is warranted by the conduct of the defendant released and in the interest of justice." 18 U.S.C. § 3583(e)(1). The court must consider the following factors under 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide [the defendant] with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (citing 18 U.S.C. § 3553(a)(1), (2)(B)–(D), (4)–(7)). "A district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Id.* District courts "are not required to make specific findings of fact with respect to each of these factors; rather, a statement that the district court has considered the statutory factors is sufficient." *Id.* at 52–53 (cleaned up).

## III.     DISCUSSION

As a preliminary matter, Kesten's plea agreement prohibits him from filing the present Motion. The Plea Agreement provides that "defendant [] knowingly and voluntarily waives the right to challenge this prosecution, conviction or sentence (including the restitution order) in any collateral attack." (Ex. 2 ¶ 6.) The Third Circuit has held that a waiver of the right to "challenge this . . . sentence" in this context applies to a motion for early termination of supervised release.

3

*See United States v. Damon*, 933 F.3d 269, 274–75 (3d Cir. 2019). Therefore, Kesten's "challenge to the duration of his supervised release falls within the scope of his appellate waiver." *Id.* at 275.

Even assuming *arguendo* that Kesten could file the present Motion, the Court has considered the statutory factors under 18 U.S.C. § 3553(a) and determines that terminating Kesten's supervised release is not appropriate. *See United States v. Sheppard*, 17 F.4th 449, 455–56 (3d Cir. 2021). The first factor weighs strongly against terminating Kesten's supervised release. *See* 18 U.S.C. § 3553(a)(1). Kesten pled guilty to a crime of significant magnitude: he used his position of public trust as a physician to prescribe highly addictive medication to patients who did not need it, in exchange for kickbacks; in other words, for money. Not only did his conduct put his patients in danger, it defrauded the American taxpayer, causing Medicare and Medicaid to pay millions of dollars for unwarranted co-pays and prescriptions. Kesten's conduct was not an accident or one-off; for years, he increased his own participation in the scheme by prescribing more drugs and attending more Speakers Bureau events.

The fact that Kesten was sentenced to a term of imprisonment *far below* the guidelines range arguably weighs against terminating his supervised release. *See* 18 U.S.C. § 3553(a)(4). During presentencing, the guideline sentencing range for Kesten's conduct was 46 to 57 months. (*See* Ex. 1 ¶ 122.) As part of his plea, the Government agreed to recommend a plea "at the low-end of the applicable guideline range." (Ex. 2 at 6.) Ultimately, Kesten was sentenced to only 24 months, a significant downward variance from the sentence set forth in the Advisory Guidelines. (ECF No. 2-2 at 2.) The sentencing court imposed three years of supervised release, based on a sentencing guideline of one to three years. (*Id.* at 3.) Since Kesten already benefited from a significant downward variance in his sentence, and his three-year supervised release was factored

4

into his low sentence of imprisonment, he is not entitled to early termination of supervised release. *See United States v. Triplett*, No. 16-248, 2020 WL 6701023, at *4 (W.D. Pa. Nov. 13, 2020).

Defendant argues that his "unblemished" record while on supervised release is evidence that his term of supervision should be terminated. (ECF No. 5 at 2.) However, his compliance "may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects." *United States v. Hall*, No. 05-367, 2025 WL 306537, at *3 (W.D. Pa. Jan. 27, 2025) (quotation omitted). Moreover, the Court disagrees with Kesten's self-serving belief that "[n]o need is served by continuing his supervision." (ECF No. 5 at 2.) The Court is convinced that terminating Defendant's supervised release at this juncture is unwarranted. Accordingly, Defendant's Motion (ECF No. 5) is **DENIED.**

Accordingly, **IT IS** on this 4th day of February, 2025,

**ORDERED** that Defendant's Motion for Early Termination of Supervised Release (ECF No. 5) is **DENIED**; and further

**ORDERED** that the Clerk of the Court is directed to **TERMINATE** the motion pending at ECF No. 5.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**